LAURA E. DUFFY
United States Attorney
JOSEPH J.M. ORABONA
Assistant U.S. Attorney
DAVID P. FINN
Special Assistant U.S. Attorney
California State Bar Nos. 223317/249247
Federal Office Building
880 Front Street, Room 6293
San Diego, California  92101-8893
Telephone: (619) 546-7951
Facsimile:  (619) 546-0510
Email: joseph.orabona@usdoj.gov

Attorneys for Plaintiff
United States of America

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| UNITED STATES OF AMERICA,<br><br>                    Plaintiff,<br><br>        v.<br><br>RICARDO LOPEZ-MUNGUIA,<br><br>                    Defendant. | Criminal Case No. 13CR2295-LAB<br><br>Date:  August 19, 2013<br>Time:  2:00 p.m.<br><br>The Honorable Larry A. Burns<br><br>**UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS TO**<br><br>**(1)   TRANSFER CASE TO LAB;**<br>**(2)   COMPEL DISCOVERY AND PRESERVE EVIDENCE; AND**<br>**(3)   LEAVE TO FILE FURTHER MOTIONS**<br><br>**TOGETHER WITH STATEMENT OF FACTS, MEMORANDUM OF POINTS AND AUTHORITIES** |
|---|---|

The plaintiff, UNITED STATES OF AMERICA, by and through its counsel, Laura E. Duffy, United States Attorney, Joseph J.M. Orabona, Assistant United States Attorney, and David P. Finn, Special Assistant U.S. Attorney, hereby files its Response in Opposition to Defendant's above-referenced Motions. This Response in Opposition is based upon the files and records of the case, together with the attached statement of facts and memorandum of points and authorities.

# I

# STATEMENT OF THE CASE

On June 20, 2013, a federal grand jury in the Southern District of California returned a sealed Indictment charging Defendant with harboring illegal aliens for financial gain, in violation of 8 U.S.C. § 1324(a)(1)(A)(iii) and (B)(i), and aggravated identity theft, in violation of 18 U.S.C. § 1028A. On June 27, 2013, Defendant was arrested on the outstanding warrant and was arraigned on the Indictment. Defendant pled not guilty to the charges. The Court will hear motions on August 19, 2013. The United States hereby files its response in opposition to Defendant's motions.

# II

# STATEMENT OF FACTS

Defendant was the primary manager responsible for the unlawful hiring and retention of undocumented aliens at a local janitorial company in San Diego County. Defendant began his employment with the company in May 2006, and continued working there until his arrest in July 2012.[1] During his employment with the company, Defendant hired and aided and abetting the hiring of undocumented aliens by falsifying immigration records using the Social Security numbers of United States citizens and Legal Permanent Residents in order to defraud Homeland Security into believing the company was hiring legal workers. As part of fraud, Defendant allowed several of the undocumented aliens to use Defendant's sister's Social Security number in order to obtain employment at the company.

A search warrant was executed on June 28, 2013. The janitorial company was not aware of the pending criminal investigation until the search warrant was executed. The charges pending against Defendant are related to the ongoing criminal investigation of the janitorial company.

---

[1] Defendant is a previously deported alien with a drug trafficking conviction from the 1980s. In 1996, Defendant assumed the identity of his deceased cousin and used that identity to gain employment at the janitorial company in May 2006. In July 2012, Defendant attempted to enter the United States using his deceased cousin's identity. He was charged with the crimes of attempted entry, making a false claim to U.S. citizenship, and voter fraud. Defendant pled guilty to the charges and was sentenced on June 24, 2013 to server 5 years probation.

# III

# THE UNITED STATES' RESPONSE IN OPPOSITION TO DEFENDANT'S MOTIONS ALONG WITH A MEMORANDUM OF POINTS AND AUTHORITIES

## A. MOTION TO TRANSFER THE CASE

Defendant made a motion to transfer the case. This motion is moot. The United States filed a Notice of Related Case on August 1, 2013, and the case was transferred to the assigned District Judge as it was related to another case that was considered "pending" under the Local Rules. As such, this motion may be denied as moot.

## B. MOTIONS TO COMPEL DISCOVERY/PRESERVE EVIDENCE

As of the date of this motion response, the United States has produced over 300 pages of discovery (including agent reports, photos of material witnesses, surveillance photographs) and three DVDs of the statements of the three material witnesses. On August 15, 2013, the United States learned that counsel for Defendant has a conflict of interest based upon representation of another current client, and Defendant will be requesting a change of counsel. As such, there is additional discovery that will be produced once the Court has resolved the conflict and appointed conflict-free counsel.

The United States will continue to comply with its obligations under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963), the Jenks Act (18 U.S.C. § 3500 et seq.), and Rule 16 of the Federal Rules of Criminal Procedure ("Fed. R. Crim. P."). At this point the United States has received **no** reciprocal discovery. In view of the below-stated position of the United States concerning discovery, the United States requests the Court issue no orders compelling specific discovery by the United States at this time.

### 1. Defendant's Statements

The United States will comply with Fed. R. Crim. P. 16(a)(1)(A) and 16(a)(1)(B). The United States has produced all of Defendant's statements that are known to the undersigned as of the date of this response. If the United States discovers additional oral or written statements that require disclosure under Fed. R. Crim. P. 16(a)(1)(A) or (B), such statements will be provided to Defendant.

The United States recognizes its obligations under Fed. R. Crim. P. 16(a)(1)(A) to disclose "the substance of any relevant oral statement made by the defendant, before or after arrest, in response to interrogation by a person the defendant knew was a government agent if the government intends to use the statement in trial." However, the United States is not required under Fed. R. Crim. P. 16 to deliver oral statements, if any, made by a defendant to persons who are not United States' agents. Nor is the United States required to produce oral statements, if any, voluntarily made by a defendant to United States' agents. See United States v. Hoffman, 794 F.2d 1429, 1432 (9th Cir. 1986); United States v. Stoll, 726 F.2d 584, 687-88 (9th Cir. 1984). Fed. R. Crim. P. 16 does not require the United States to produce statements by Defendant that it does not intend to use at trial. Moreover, the United States will not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

## 2. Arrest Reports, Notes and Dispatch Tapes

As discussed above, the United States will comply with comply with Fed. R. Crim. P. 16(a)(1)(A) and (B). The United States has turned over a number of investigative reports, including those which disclose the substance of Defendant's oral statements made in response to routine questioning by United States' law enforcement officers. If additional reports by United States' agents come to light, the United States will supplement its discovery.

The United States objects to Defendant's request for an order for production of any rough notes of United States' agents that may exist. Production of these notes, if any exist, is unnecessary because they are not "statements" within the meaning of the Jencks Act unless they contain a substantially verbatim narrative of a witness' assertions and they have been approved or adopted by the witness. See discussion infra discussing Jencks Act; see also United States v. Alvarez, 86 F.3d 901, 906 (9th Cir. 1996); United States v. Bobadilla-Lopez, 954 F.2d 519, 522 (9th Cir. 1992). The production of agents' notes is not required under Fed. R. Crim. P. 16 because the United States has "already provided defendant with copies of the formal interview reports prepared therefrom."

1 United States .v Griffin, 659 F.2d 932, 941 (9th Cir. 1981).  In addition, the United
2 States considers the rough notes of its agents to be United States' work product, which
3 Fed. R. Crim. P. 16(a)(2) specifically exempts from disclosure.

### 3. *Brady* Material

The United States has complied and will continue to comply with its obligations under Brady v. Maryland, 373 U.S. 83 (1963).  Under Brady and United States v. Agurs, 427 U.S. 97 (1976), the government need not disclose "every bit of information that might affect the jury's decision."  United States v. Gardner, 611 F.2d 770, 774-75 (9th Cir. 1980).  The standard for disclosure is materiality.  Id.  "Evidence is material under Brady only if there is a reasonable probability that the result of the proceeding would have been different had it been disclosed to the defense."  United States v. Antonakeas, 255 F.3d 714, 725 (9th Cir. 2001).

The United States will also comply with its obligations to disclose exculpatory evidence under Brady v. Maryland, 373 U.S. 83 (1963).  Furthermore, impeachment evidence may constitute Brady material "when the reliability of the witness may be determinative of a criminal defendant's guilt or innocence."  United States v. Blanco, 392 F.3d 382, 387 (9th Cir. 2004) (internal quotation marks omitted).  However, the United States will not produce rebuttal evidence in advance of trial.  See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

Brady does not, however, require that the United States open its file for discovery.  See United States v. Henke, 222 F.3d 633, 642-44 (9th Cir. 2000) (per curiam).  Under Brady, the United States is not required to provide: (1) neutral, irrelevant, speculative, or inculpatory evidence (see United States v. Smith, 282 F.3d 758, 770 (9th Cir. 2002)); (2) evidence available to the defendant from other sources (see United States v. Bracy, 67 F.3d 1421, 128-29 (9th Cir. 1995)); (3) evidence that the defendant already possess (see United States v. Mikaelian, 168 F.3d 380, 389-90) (9th Cir. 1999), amended by 180 F.3d 1091 (9th Cir. 1999)); or (4) evidence that the United States Attorney could not reasonably be imputed to have knowledge or control over (see United States v. Hanson, 262 F.3d 1217, 1234-35 (11th Cir. 2001)).

### 5.     **Any Information That May Result in a Lower Sentence**

Defendant claims that the United States must disclose information affecting Defendant's sentencing guidelines because such information is discoverable under <u>Brady v. Maryland</u>, 373 U.S. 83 (1963). The United States respectfully contends that it has no such disclosure obligation under <u>Brady</u>.

The United States is not obligated under <u>Brady</u> to furnish a defendant with information which he already knows. <u>See</u> <u>United States v. Taylor</u>, 802 F.2d 1108, 1118 n.5 (9th Cir. 1986). <u>Brady</u> is a rule of disclosure, and therefore, there can be no violation of <u>Brady</u> if the evidence is already known to the defendant. In such case, the United States has not suppressed the evidence and consequently has no Brady obligation. <u>See</u> <u>United States v. Gaggi</u>, 811 F.2d 47, 59 (2d Cir. 1987).

But even assuming Defendant does not already possess the information about factors which might affect his guideline range, the United States would not be required to provide information bearing on Defendant's mitigation of punishment until after Defendant's conviction or plea of guilty and prior to his sentencing date. <u>See</u> <u>United States v. Juvenile Male</u>, 864 F.2d 641, 647 (9th Cir. 1988) ("No [Brady] violation occurs if the evidence is disclosed to the defendant at a time when the disclosure remains in value."). Accordingly, Defendant's demand for this information is unwarranted.

### 5.     **Defendant's Prior Record**

The United States has will provide Defendant with a copy of his criminal record and related court documents, in accordance with Fed. R. Crim. P. 16(a)(1)(D). In particular, the United States requests the Court's permission to provide the Presentence Report to Defendant from his prior case, 12CR3188-LAB.

### 6.     **Any Proposed 404(b) or 609 Evidence**

The United States hereby provides notice to Defendant of its intent to introduce Defendant's prior instances where Defendant was a deported alien found in the United States under Rule 404(b). In particular, the United States may introduce such occurrences in 2002, 2003, 2008, and 2010. In addition, should Defendant testify at trial,

the United States intends to use Defendant's prior attempted robbery and deported alien convictions as impeachment under Rule 609.

The United States has complied and will continue to comply with its obligations under Rules 404(b) and 609 of the Federal Rules of Evidence ("Fed. R. Evid."). The United States has already provided Defendant with a copy of his criminal record, in accordance with Fed. R. Crim. P. 16 (a)(1)(D). Furthermore, pursuant to Fed. R. Evid. 404(b) and 609, the United States will provide Defendant with reasonable notice before trial of the general nature of the evidence of any extrinsic acts that it intends to use at trial. See Fed. R. Evid. 404(b), advisory committee's note ("[T]he Committee opted for a generalized notice provision which requires the prosecution to appraise the defense of the general nature of the evidence of extrinsic acts. The Committee does not intend that the amendment will supercede other rules of admissibility or disclosure[.]").

### 7. Evidence Seized

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E).

### 8. Request for Preservation of Evidence

The United States will preserve all evidence pursuant to an order issued by this Court. The United States objects to an overbroad request to preserve all physical evidence. The United States recognizes its obligation to preserve evidence "that might be expected to play a significant role in the suspect's defense." California v. Trombetta, 467 U.S. 479, 488 (1984). To require preservation by the United States, such evidence must (1) "possess an exculpatory value that was apparent before the evidence was destroyed," and (2) "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489; see also Cooper v. Calderon, 255 F.3d 1104, 1113-14 (9th Cir. 2001).

The United States will make every effort to preserve evidence it deems relevant and material to this case. Any failure to gather and preserve evidence, however, would not violate due process absent bad faith by the United States that results in actual

prejudice to the Defendant. See Illinois v. Fisher, 504 U.S. 544 (2004); Arizona v. Youngblood, 488 U.S. 51, 57-58 (1988); United States v. Rivera-Relle, 322 F.3d 670 (9th Cir. 2003); Downs v. Hoyt, 232 F.3d 1031, 1037-38 (9th Cir. 2000).

### 9. *Henthorn* Materials

The United States has complied and will continue to comply with United States v. Henthorn, 931 F.2d 29 (9th Cir. 1991) by requesting that all federal agencies involved in the criminal investigation and prosecution review the personnel files of the federal law enforcement inspectors, officers, and special agents whom the United States intends to call at trial and disclose information favorable to the defense that meets the appropriate standard of materiality. See United States v. Booth, 309 F.3d 566, 574 (9th Cir. 2002) (citing United States v. Jennings, 960 F.2d 1488, 1489 (9th Cir. 1992)). If the materiality of incriminating information in the personnel files is in doubt, the information will be submitted to the Court for an in camera inspection and review.

Defendant's request that the specific prosecutor in this case review or oversee the personnel files is unwarranted and unnecessary. Henthorn expressly provides that it is the "government," not the prosecutor, which must review the personnel files. Henthorn, 931 F.2d at 30- 31. Accordingly, the United States will utilize its typical practice for review of these files, which involves requesting designated representatives of the relevant agencies to conduct the reviews. The United States opposes the request for an order that the prosecutor personally review or oversee the review of personnel files.

### 10. Tangible Objects

As previously discussed in response 7 above, the United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(E) in allowing Defendant an opportunity, upon reasonable notice, to examine, inspect, and copy all evidence seized and/or tangible objects that are within the possession, custody, or control of the United States, and that are either material to the preparation of Defendant's defense, or are intended for use by the United States as evidence during its case-in-chief, or were

obtained from or belongs to Defendant. However, the United States need not produce rebuttal evidence in advance of trial. See United States v. Givens, 767 F.2d 574, 584 (9th Cir. 1984).

### 11. Expert Witness

The United States has complied and will continue to comply with Fed. R. Crim. P. 16(a)(1)(G) and provide Defendant with notice and a written summary of any expert testimony that the United States intends to use during its case-in-chief at trial under Fed. R. Evid. 702, 703, or 705.

### 12. Impeachment Evidence

The United States incorporates by reference Response 3 above.

### 13. Evidence of Criminal Investigation of Any Government Witness

The United States incorporates by reference Response 3 above. The United States objects to Defendant's overbroad request for evidence of criminal investigations by federal, state, or local authorities into prospective government witnesses. The United States is unaware of any rule of discovery or Ninth Circuit precedent that entitles Defendant to any and all evidence that a prospective government witness is under investigation by federal, state or local authorities. Moreover, as discussed above, the United States has no obligation to disclose information not within its possession, custody or control. See United States v. Gatto, 763 F.2d 1040, 1048 (9th Cir. 1985); United States v. Aichele, 941 F.2d 761, 764 (9th Cir. 1991) (California state prisoner's files outside of federal prosecutor's possession); United States v. Chavez-Vernaza, 844 F.2d 1368, 1375 (9th Cir. 1987) (the federal government had no duty to obtain from state officials documents of which it was aware but over which it had no actual control); cf. Beaver v. United States, 351 F.2d 507 (9th Cir. 1965) (Jencks Act refers to "any statement" of a witness produced by United States which is in possession of United States and does not apply to a recording in possession of state authorities).

The United States recognizes and will comply with its obligations under the rules of discovery and Ninth Circuit precedent to disclose exculpatory and impeachment

information. The United States also recognizes its obligation to provide information--if any exists--related to the bias, prejudice or other motivation of United States' trial witnesses, as mandated in Napue v. Illinois, 360 U.S. 264 (1959), when it files its trial memorandum.

### 14. Evidence of Bias or Motive to Lie

The United States incorporates by reference Response 3 above.

### 15. Evidence re: Perception, Recollection, Ability to Communicate

The United States incorporates by reference Response 3 above.

### 16. Witness Addresses

The United States objects to Defendant's request for witness addresses and phone numbers. Defendant is not entitled to the production of addresses or phone numbers of possible witnesses for the United States. See United States v. Hicks, 103 F.3d 837, 841 (9th Cir. 1996); United States v. Thompson, 493 F.2d 305, 309 (9th Cir. 1977), cert denied, 419 U.S. 834 (1974). None of the cases cited by Defendant, nor any rule of discovery, requires the United States to disclose witness addresses. There is no obligation for the United States to provide addresses of witnesses that the United States intends to call or not call. Therefore, the United States will not comply with this request.

The United States has provided and will continue to provide Defendant with the reports containing the names of the agents involved in the apprehension and interviews of Defendant. A defendant in a non-capital case, however, has no right to discover the identity of prospective government witnesses prior to trial. See Weatherford v. Bursey, 429 U.S. 545, 559 (1977); United States v. Dishner, 974 F.2d 1502, 1522 (9th Cir. 1992) (citing United States v. Steel, 759 F.2d 706, 709 (9th Cir. 1985)). Nevertheless, in its trial memorandum, the United States will provide Defendant with a list of all witnesses whom it intends to call in its case-in-chief, although delivery of such a witness list is not required. See United States v. Discher, 960 F.2d 870 (9th Cir. 1992).

The United States also objects to any request that the United States provide a list of every witness to the crimes charged who will not be called as a government witness.

"There is no statutory basis for granting such broad requests," and such a request "far exceed[s] the parameters of Rule 16(a)(1)(C)." United States v. Yung, 97 F. Supp.2d 24, 36 (D.D.C. 2000) (quoting United States v. Boffa, 513 F. Supp. 444, 502 (D. Del. 1980)).

### 17.   Names of Witnesses Favorable to Defendant

The United States incorporates by reference Responses 3 and 16 above.

### 18.   Statements Relevant to the Defense

The United States incorporates by reference Response 3 above. The United States objects to the request for "any statement relevant to any possible defense or contention" as overbroad and not required by any discovery rule or Ninth Circuit precedent. Therefore, the United States will only disclose relevant statements made by Defendant pursuant to this request.

### 19.   Jencks Act Material

The United States will fully comply with its discovery obligations under the Jencks Act. For purposes of the Jencks Act, a "statement" is (1) a written statement made by the witness and signed or otherwise adopted or approved by him, (2) a substantially verbatim, contemporaneously recorded transcription of the witness' oral statement, or (3) a statement by the witness before a grand jury. See 18 U.S.C. § 3500(e). Notes of an interview only constitute statements discoverable under the Jencks Act if the statements are adopted by the witness, as when the notes are read back to a witness to see whether or not the government agent correctly understood what the witness said. United States v. Boshell, 952 F.2d 1101, 1105 (9th Cir. 1991) (citing Goldberg v. United States, 425 U.S. 94, 98 (1976)). In addition, rough notes by a government agent "are not producible under the Jencks Act due to the incomplete nature of the notes." United States v. Cedano-Arellano, 332 F.3d 568, 571 (9th Cir. 2004).

Production of this material need only occur after the witness making the Jencks Act statements testifies on direct examination. See United States v. Robertson, 15 F.3d 862, 873 (9th Cir. 1994). Indeed, even material that is potentially exculpatory (and therefore subject to disclosure under Brady) need not be revealed until such time as the witness testifies on direct examination if such material is contained in a witness's Jencks

Act statements.  See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979). Accordingly, the United States reserves the right to withhold Jencks Act statements of any particular witness it deems necessary until after they testify.

### 20. *Giglio* and Agreements Between Government and Witnesses

The United States incorporates by reference Response 3 above.  The United States will comply with its obligations to disclose impeachment evidence under Giglio v. United States, 405 U.S. 150 (1972).  Moreover, the United States will disclose impeachment evidence, if any exists, when it files its trial memorandum, although it is not required to produce such material until after its witnesses have testified at trial or at a hearing.  See United States v. Bernard, 623 F.2d 551, 556 (9th Cir. 1979).

The United States recognizes its obligation to provide information related to the bias, prejudice or other motivation of United States' trial witnesses as mandated in Napue v. Illinois, 360 U.S. 264 (1959).  The United States will provide such impeachment material in its possession, if any exists, at the time it files its trial memorandum. At this time, the United States is unaware of any prospective witness that is biased or prejudiced against Defendant or that has a motive to falsify or distort his or her testimony.  The United States is unaware of any evidence that any United States witness' ability to perceive, recollect, communicate or tell the truth is impaired.

With respect to Defendant's request for agreements between the United States and Witnesses, the United States objects to this overbroad request.  Defendant cites no authority – rule of procedure or case law – to support his request.  As such, the United States will comply with its obligations as noted infra Response 22.

### 21. Agreements Between Government and Witnessesb

The United States incorporates by reference Responses 3 and 20 above and Response 22 below.

### 22. Informants and Cooperating Witnesses

Defendant incorrectly asserts that Roviaro v. United States, 353 U.S. 52 (1957), establishes a per se rule that the United States must disclose the identity and location of

confidential informants used in a case. Rather, the Supreme Court held that disclosure of an informer's identity is required only where disclosure would be relevant to the defense or is essential to a fair determination of a cause. Id. at 60-61. Moreover, in United States v. Jones, 612 F.2d 453 (9th Cir. 1979), the Ninth Circuit held:

> The trial court correctly ruled that the defense had no right to pretrial discovery of information regarding informants and prospective government witnesses under the Federal Rules of Criminal Procedure, the Jencks Act, 18 U.S.C. § 3500, or Brady v. Maryland, 373 U.S. 83, 83 S.Ct. 1194, 10 L.Ed.2d 215 (1963).

Id. at 454. As such, the United States is not obligated to make such a disclosure, if there is in fact anything to disclose, at this point in the case.

If there is a confidential informant involved in this case, the Court may, in some circumstances, be required to conduct an in-chambers inspection to determine whether disclosure of the informant's identity is required under Roviaro. See United States v. Ramirez-Rangel, 103 F.3d 1501, 1508 (9th Cir. 1997). That said, the United States is unaware of the existence of an informant or any cooperating witnesses in this case. The United States is also unaware of any agreements between the United States and potential witnesses.

### 23.  **Bias by Informants or Cooperating Witnesses**

The United States incorporates by reference Responses 3, 20, 21 and 22 above.

### 24.  **Personnel Records of Officers Involved in Arrest**

As discussed supra Part III.A.9, the United States will instruct all relevant agencies to review the personnel files of government witnesses for information pertaining to dishonesty or impeachment. Defendant has not cited any authority that requires the United States to produce "citizen complaints and other related internal affairs documents." [Def. Motion at 11.] The case cited by Defendant, Pitchess v. Superior Court, 11 Cal.3d 531, 539 (1974) has been superceded by statute. See Fagan v. Superior Court, 111 Cal. App.4th 607 (2003). Moreover, Pitchess involved a criminal case in which a defendant who claimed to have acted in self-defense sought evidence as to the police officers' use of force on previous occasions. Pitchess, 11 Cal. 3d at 534,

535. Pitchess is simply inapplicable to Defendant's case.

### 25. TECS Reports

The United States also objects to providing Defendant with complete vehicle and pedestrian crossing reports from the Treasury Enforcement Communications System ("TECS"). TECS reports are not subject to Fed. R. Crim. P. 16(c) because the reports are neither material to the preparation of the defense, nor intended for use by the United States as evidence during its case-in-chief. The TECS reports are not Brady material because the TECS reports do not present any material exculpatory information or any evidence favorable to Defendant that is material to guilt or punishment. This case involves harboring illegal aliens and aggravated identity theft. Defendant must articulate how he believes that the TECS reports are discoverable and relevant to these charges.

### 26. Reports of Scientific Tests or Examinations

The United States will provide Defendant with any scientific tests or examinations, in accordance with Fed. R. Crim. P. 16(a)(1)(F).

### 27. Brady Information

The United States incorporates by reference Responses 3 above.

### 28. Residual Request

As indicated, the United States will comply with its discovery obligations in a timely manner.

### C. LEAVE TO FILE FURTHER MOTIONS

The United States does not oppose this motion provided that it is based upon discovery that was not available to the defense at the time of the motion hearing scheduled for August 19, 2013. Given that Defendant does not have conflict-free counsel, it is expected that additional motions may be filed.

//
//
//
//

# IV
# **CONCLUSION**

For the foregoing reasons, the United States requests the Court deny Defendant's Motions to Transfer the Case (moot), Compel Discovery and Preserve Evidence, and Grant Leave to File Further Motions, unless unopposed.

DATED: August 15, 2013.

                                      Respectfully submitted,

                                      LAURA E. DUFFY
                                      United States Attorney

                                      /s/ *Joseph J.M. Orabona*
                                      JOSEPH J.M. ORABONA
                                      Assistant United States Attorney

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | Criminal Case No. 13CR2295-LAB |
| Plaintiff, | ) | |
| | ) | **CERTIFICATE OF SERVICE** |
| v. | ) | |
| RICARDO LOPEZ-MUNGUIA, | ) | |
| Defendant. | ) | |

IT IS HEREBY CERTIFIED that:

I, Joseph J.M. Orabona, am a citizen of the United States and am at least eighteen years of age. My business address is 880 Front Street, Room 6293, San Diego, California 92101-8893.

I am not a party to the above-entitled action. I have caused service of the **United States' Response in Opposition** to Defendant's Motions to Transfer Case, Compel Discovery and Preserve Evidence and Grant Leave to File Further Motions; together with the separately captioned Statement of Facts and Memorandum of Points and Authorities on the following parties by electronically filing the foregoing with the Clerk of the District Court using its ECF System, which electronically notifies them.

Bridget Kennedy
Federal Defenders of San Diego, Inc.
225 Broadway, Suite 900
San Diego, California 92101
Tel: (619) 234-8467
Fax: (619) 234-2666
Email: bridget_kennedy@fd.org
*Lead Attorney for Defendant*

I declare under penalty of perjury that the foregoing is true and correct.

Executed on August 15, 2013.

/s/ *Joseph J.M. Orabona*
JOSEPH J.M. ORABONA
Assistant United States Attorney